RUSSEL v. HUNTINGTON NAT. BANK.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1908.)

No. 748.

1. LIMITATION OF ACTIONS—FRAUD—TRUSTS—DISCOVERY OF FRAUD.

Where intestate was trustee of a secret trust, so far as complainant was concerned, limitations did not begin to run against his administratrix to recover for alleged breaches of trust until the right of action accrued on discovery of the fraud.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 486.]

2. TRUSTS—ACTION TO ENFORCE—LACHES.

Where complainant had no knowledge of an assignment for its benefit, under which intestate, its president, held and administered certain property as trustee, until the paper was found in his safety deposit box after his death, when it was first discovered that intestate had committed various breaches of trust as against complainant, after which suit was promptly brought against intestate's administratrix, complainant's right to recover was not barred by laches.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 571.]

3. APPEAL AND ERROR—ASSIGNMENTS OF ERROR.

Errors not assigned will not be considered on appeal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 2968–2982.]

Appeal from the Circuit Court of the United States for the Southern District of West Virginia, at Huntington.

James P. Bush and Z. T. Vinson (Vinson & Thompson, J. W. Caperton, Frank E. Jennings, and Stoll & Bush, on the briefs), for appellant.

F. B. Enslow (Simms & Enslow, on the brief), for appellee.

Before PRITCHARD, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

PURNELL, District Judge.   Suit was instituted in 1905 in the circuit court of Cabell county, W. Va., to compel Minerva P. Russel, administratrix of John Hooe Russel, to account for the proceeds of the property of the Huntington Distilling Company, which is alleged to have come into the hands of said John Hooe Russel under an assignment made by said distilling company to the Huntington National Bank to secure $9,000, or about that sum, due from assignor to said bank, and, in case these proceeds were insufficient to pay said debt in full, then to require certain stockholders, of which said Russel was one, in said distilling company, to pay the balance of said debt out of alleged unpaid stock subscriptions.   The administratrix aforesaid, a resident of Kentucky, though appointed in West Virginia, removed the cause to the Circuit Court of the United States.   When a motion to remand was overruled, the cause was referred to a master, and upon the report of the master a final decree entered.   From this final decree defendant, plaintiff in error here, appealed, and assigned the following as error:

"(1) Because the evidence showed that the plaintiff was guilty of laches, and for that reason was not entitled to the relief asked for in its bill and given

it by the Circuit Court. (2) Because the evidence showed that the plaintiff's claim was barred by the statute of limitation. (3) Because the court erred in holding that the evidence of the officers and stockholders of the plaintiff was admissible as against the representatives of the estate of the defendant's decedent, John Hooe Russel, pertaining to personal communications and transactions had with the said Russel in his lifetime. (4) The Circuit Court erred in holding that the relationship which the said Russel bore to the property turned over to the plaintiff bank as security for the payment of the debt held by it against the distilling company created such a trust relationship that the plea of limitations was not available as a defense against plaintiff's demand. (5) The court erred in holding that the defendant, Minerva Phelps Russel, administratrix, etc., could not invoke the doctrine of laches to defeat the plaintiff's claim. (6) And for other errors apparent upon the face of the record."

The first and second assignments, the two relied on in the argument here, are kindred in their nature and import—one in equity and the other statutory. Some doubt the justice and propriety of pleading the statute of limitation; but the Legislatures of many states have passed acts requiring executors, administrators, and others acting in a fiduciary capacity to do so, thus showing a wide difference of opinion on the subject. At all events it is a statutory plea, and proper to be made in a case where it arises and can be maintained. Appellant's intestate, Russel, was president of the bank, and both managing officer and assignee of the distilling company, acting in two fiduciary capacities, not necessarily conflicting, but capable of being made antagonistic. Says the Supreme Court in Prevost v. Gratz, 6 Wheat. 481, 5 L. Ed. 311:

"Length of time is no bar to a trust clearly established, and in a case where fraud is imputed and proven length of time ought not, upon the principle of eternal justice, to be admitted to repel relief. On the contrary, it would seem that length of time during which the fraud has been successfully concealed and practiced is rather an aggravation of the offense, and calls more loudly upon a court of equity to grant ample relief."

The syllabus of this case is:

"To establish a trust the onus probandi is on the party who alleges it. The trust seems to have been fully proven. In general, length of time is no bar to a trust clearly established to have once existed, and, where fraud is imputed and proved, length of time ought not to exclude relief."

The situation was unfortunate. Russel was president of the bank, and possibly exercised a controlling influence in the board of directors, who had implicit confidence in his integrity. At least no investigation of his acts as trustee seems to have been made during his life. After his death a condition was disclosed which pointed strongly to the fact that he had not faithfully discharged his trust, had made applications of funds belonging thereto which should not have been made, and now his administratrix sets up laches and the statute of limitations as a defense to a suit for the enforcement of the trust, to recover funds which rightfully did and should belong to the cestui que trust. Such defense is not tenable, certainly not in a court of equity, which is a court of conscience. The trust was kept a secret by Russel. No man ever may or will be permitted to take advantage of his own or his intestate's wrong in a court of equity. Patterson v. Hewitt, 195 U. S. 309, 25 Sup. Ct. 35, 49 L. Ed. 214, cited by appellee's counsel, discusses the question of laches as follows:

"Some degree of diligence in bringing suit is required under all systems of jurisprudence. In actions at law, the question of diligence is determined by the words of the statute. If an action be brought the day before the statutory time expires, it will be sustained; if a day after, it will be defeated. In suits in equity the question is determined by the circumstances of each particular case. The statute of limitations consorts with the rigid principles of common law, but is ill adapted to the flexible remedies of a court of equity. The statutes frequently work great practical injustice; the doctrine of laches, never. True, lapse of time is one of the chief ingredients; but there are others of almost equal importance. Change in the value of the property between the time the cause of action arose and the time the bill was filed, complainant's knowledge or ignorance of the facts constituting the cause of action, as well as his diligence in availing himself of the means of knowledge within his control, are all material to be considered upon the question whether the suit was brought without unreasonable delay."

In this case the facts were well known to complainant and the delay in bringing suit was eight years. In the case at bar the breach of trust, on account of the peculiar circumstances, was not known until after the death of the trustee. On account of the circumstances, and the fiduciary relation which he occupied in both corporations, no one supposed he was acting in any way but bona fide to each, and nothing was known to the contrary until after his death, January 9, 1903, little over three years before suit was entered. The statute of limitations began from this discovery, when the right of action accrued, and under no circumstances can be a valid defense in a suit in equity. The defense must be equitable, not legal. Quoting from the opinion of the acting circuit judge, which learned opinion we adopt:

"The defense of laches must necessarily be liberally upheld and applied by courts of equity, because its basic principle is to prevent oppression and injustice, so easy of perpetration where loss of written evidence, removal of witnesses, death of parties, and the numerous other like causes incident to life, may wholly change conditions and render it impossible to know the right and truth of the matter. He who unreasonably delays his action until these conditions arise must lose his cause. In determining whether such delay is reasonable, the statute of limitation does not control; for a less period than the one provided by the statutory bar may, under given circumstances, be sufficient for this defense. While these principles are true, equity will allow no man, by his own fraudulent acts, by concealing a paper contract or evidence necessary upon which to base an action against himself, to take advantage of delay occasioned by such conduct on his part. He who appeals to equity must come with pure heart and clean hands. It is true to-day, as it was when Lord Loughborough decided Beaumont v. Boultbee, 5 Ves. 485, that no possible case can rightly stand under the beneficient administration of equity wherein 'a confidential agent and steward can impute neglect to his employer; for it is his duty to render an account, and a fair account, to his principal, and distinctly apprise him of the whole right he has. It is not for him to say that a person has been guilty of negligence whose negligence it was his duty to guard against with regard to his transactions with all persons, and particularly with himself.' "

Appellee, it seems, did not even know of the assignment to it of the deed or other paper writing under which Russel, its president, held and administered the property as trustee, until it was found in his safety deposit box after his death. He was the trustee of a secret trust as far as they were concerned. Under such circumstances, it would be inequitable to apply the equitable doctrine of laches, and

the statute of limitation did not begin to run until the right of action accrued on the discovery, much less time than that prescribed in the statute as a bar.

What has been said above is equally applicable to the third, fourth, and fifth assignments of error.

Errors not assigned according to the rule will be disregarded. Under rule No. 11 (150 Fed. xxvii, 79 C. C. A. xxvii), therefore, the sixth assignment is not considered. We have examined the record, and find no error in the decision of the Circuit Court; hence the same is in all respects affirmed.

Affirmed.